Robert L. DOWELL et al., Plaintiffs-Appellees,

v.

The BOARD OF EDUCATION OF the OKLAHOMA CITY PUBLIC SCHOOLS et al., Defendants-Appellees,

and

Rebecca Diane Baker et al., Intervening Plaintiffs-Appellants.

Robert L. DOWELL et al., Plaintiffs-Appellees,

v.

The BOARD OF EDUCATION OF the OKLAHOMA CITY PUBLIC SCHOOLS et al., Defendants-Appellants,

Stephen S. Sanger, Jr., et al., Intervening Plaintiffs,

Jenny Mott McWilliams et al., Intervening Defendants.

Robert L. DOWELL et al., Plaintiffs,

v.

The BOARD OF EDUCATION OF the OKLAHOMA CITY PUBLIC SCHOOLS et al., Defendants,

and

Stephen S. Sanger, Jr., et al., Intervening Plaintiffs,

Jenny Mott McWilliams et al., Intervening Defendants-Appellants,

Roy Hendrickson et al., Intervening Defendants.

Nos. 191–70, 541–69, 542–69 and 435–69.

United States Court of Appeals, Tenth Circuit.

July 29, 1970.

J. Howard Edmondson and Joe Cannon, Oklahoma City, Okl., for appellants Rebecca Diane Baker and others.

J. Harry Johnson, Oklahoma City, Okl., for appellee Bd. of Ed. of Oklahoma City Public Schools and others.

John W. Walker, of Walker, Rotenberry, Kaplan, Lavey & Hollingsworth, Little Rock, Ark. (Archibald Hill, Jr., Oklahoma City, Okl., and Jack Greenberg, James M. Nabrit, III, and Sylvia Drew, New York City, with him on the brief), for appellees Robert L. Dowell and others.

Leslie L. Conner, Oklahoma City, Okl. (Harry Johnson, and James M. Little, Oklahoma City, Okl., with him on brief), for appellants Bd. of Ed. of the Oklahoma City Public Schools and others.

John W. Walker, of Walker, Rotenberry, Kaplan, Lavey & Hollingsworth, Little Rock, Ark., for appellees Robert L. Dowell and others, and Calvin W. Hendrickson, Oklahoma City, Okl. for appellee-intervenor, Stephen S. Sanger, Jr. (Jack Greenberg, James M. Nebrit, III, Norman J. Chachkin, New York City, and Archibald B. Hill, Jr., Oklahoma City, Okl., with them on the brief).

C. Harold Thweatt, Oklahoma City, Okl. (Norman E. Reynolds, George S. Guysi, and George F. Short, Oklahoma City, Okl., with him on the brief), for intervening defendants-appellants Jenny Mott McWilliams and others.

David L. Norman, Deputy Asst. Atty. Gen. (Jerris Leonard, Asst. Atty. Gen., Brian K. Landsberg, David B. Gregory, Joseph B. Scott, Attys., Civil Rights Division, U. S. Dept. of Justice, and Nathan G. Graham, U. S. Atty., with him on the brief), for the United States as amicus curiae.

Before BREITENSTEIN, HILL, and SETH, Circuit Judges.

PER CURIAM.

These appeals represent a continuation of the proceedings seeking to desegregate the Oklahoma City schools. This opinion considers principally the appeal in Case No. 191–70, which concerns a proposed system-wide desegregation plan for the junior and senior high schools which was approved by the trial court.

There are also several other appeals pending before this court which concern portions of previous plans of limited application to the same schools. These are also decided by this opinion.

The conditions which existed at the commencement of this litigation in the Oklahoma City schools as related to segregation are described in the trial court's opinions in Dowell v. School Board of Oklahoma City Public Schools, D.C., 219 F.Supp. 427, and in 244 F. Supp. 971. The basic principles to be applied are described in our opinion in Board of Education of Oklahoma City Public Schools v. Dowell, 375 F.2d 158 (10th Cir.), wherein we stated:

"Because of the refusal of the board to take prompt substantial and affirmative action after the entering of the court's decree, without further action by the court the aggrieved plaintiffs, even with a favorable decree from the court, were helpless in their efforts to protect their court-pronounced Constitutional rights. Under these circumstances it was the duty of the trial court to take appropriate action to the end that its equitable decree be made effective."

The Supreme Court in its per curiam opinion handed down in Dowell v. Board of Education, 396 U.S. 269, 90 S.Ct. 415, 24 L.Ed.2d 414, assumed or held, in

granting immediate relief, that the Oklahoma City school system was unconstitutionally segregated. The Court there said: "The burden on a school board is to desegregate an unconstitutional dual system at once."

*Appeal in No. 191–70:*

The Board of Education of the Oklahoma City Public Schools presented what is described as a comprehensive plan for the desegregation of the junior and senior high schools to be effective for the 1970–1971 school year. This is referred to as the "Cluster Plan." This Plan, by reason of its system-wide scope and the nature of the changes suggested, is designed to meet the conditions in changing neighborhoods which previous fragmented proposals were designed to meet, and to so provide relief under the great variety of conditions that exist in the Oklahoma City school system.

The Cluster Plan is an innovation both as a method for desegregation and as to educational techniques. In the Plan itself as proposed by the School Board appears the following partial statement of its aims and structure:

"The basic plan combines elements of many different concepts: the neighborhood schools, the specialized centers, the educational park, and modular scheduling; in addition, it provides for maximum utilization of both facilities and personnel.

"Under this plan, each secondary school will serve in a dual capacity. It will be a home-base school for students within its attendance area and will serve as a specialized center for a specified curricular area. For example, one school could serve as a Social Studies Center, another as a Science Center, another as a Math Center. Each school, in its role as home-base, will offer some elective courses and such activities as physical education, athletics, and music to its resident students; in its role as a specialized Center, it will offer a full range of courses in that curriculum area to stu-

dents from several attendance areas, including its own.

"To minimize the problems of access and transportation, the high schools will be divided into two clusters. Cluster A will comprise Capitol Hill, Douglass, Grant, and Southeast High Schools; Cluster B, Classen, Marshall, Northeast, Northwest Classen, Dunjee, and Star-Spencer. Within each cluster, individual schools will serve as home-base schools for students in their own attendance areas and as specialized schools for students from all schools within that cluster. The two exceptions will be Dunjee and Star-Spencer which, because of their removed location, will serve only as home-base schools. This division into two clusters simplifies the logistics of the arrangement and also offers a health balance in each cluster of racial, cultural, and economic groups.

\*    \*    \*    \*    \*    \*

"Students will spend varying amounts of time each week in each of the Centers, though not less than half the school day at any one Center. The exact amount will be determined on the basis of each student's needs and requirements. Modular scheduling, a tested and accepted means for meeting individual needs through class periods of varying lengths and different methodologies, will add an extra dimension of flexibility. The student whose primary area of interest is the same as that of his home-base school's specialization will spend the major portion of his time there; others may spend only a limited period each day at the home-base, the rest at various other Centers."

The Plan continues with the Board's description of the substantial improvements in the general educational process for all schools which can result from the operation of the Plan. As to desegregation, the Board in the Plan says: "The general structure of this plan will ensure a positive and constructive desegregation, regardless of the wide variation in individual scheduling."

The plaintiffs Dowell et al. did not appeal from the trial court's approval of the Board's Plan. In this appeal they have not endorsed the Plan but as appellees urge that it should be tried. The attack on the Plan is instead presented by a group of intervenors, the Baker group, who sought intervention at a relatively late stage in the desegregation proceedings.

■ The challenge of the Plan in the trial court and as made by the appellants in this court does not persuade us that it departs from the mandate of the Supreme Court in Green v. New Kent County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733; Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, and United States v. Montgomery County Board of Education, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263, or in the earlier decisions of the Court. It would serve no useful purpose to here again discuss these authorities or the history of the issues all of which are elsewhere fully considered and described. It is instead sufficient to hold that the proposed Plan of the Board of Education of the Oklahoma City Public Schools, filed on November 6, 1969, and supplemented on January 12, 1970, conforms to the requirements laid down by the Supreme Court.

■ It is of course apparent that the real and ultimate issue in any case such as this is the actual effectiveness of the plan proposed. This is difficult to predict in this instance since the Plan here presented is a virtually untried method and one departing widely from customary school attendance and scheduling practices. However, the record before us demonstrates that as the Plan is proposed in general terms it is an acceptable one for the effective and immediate desegregation of the junior and senior high schools. As a method or device for desegregation, the approval of the Plan by the trial court was well within its jurisdiction and discretion.

The group of individuals, appellants herein, who have been referred to in the proceedings as the Rebecca Diane Baker group filed a complaint in intervention, and were permitted by the trial court to intervene on a temporary basis. These parties participated throughout the hearings on the Cluster Plan and certain witnesses called on their behalf testified. At the conclusion of the hearings, and in the final order of the trial court, the motion by this group to intervene was denied. This action by the trial court is an issue on this appeal.

■ As indicated above, the members of this group were treated as parties in the proceedings. It is apparent that in some respects their position was the same or similar to that of parties who had theretofore intervened; however, proceedings of this nature which continue over such an extended period of time are unique in respect to the timing of the arrival and departure of parties. In our opinion intervention and withdrawal should be freely granted so long as it does not seriously interfere with the actual hearings. The order of the trial court denying intervention of the Baker group is therefore reversed, and the intervention of the Baker group is allowed.

■ The appellants in their brief and during the course of oral argument have again urged that section 2000c of the Civil Rights Act of 1964 (42 U.S.C. § 2000c) prevents the action taken by the trial court in the approval of the Cluster Plan. We have considered the application of the Act and find nothing in the trial court's order to be contrary to it whether it be applicable or not. In Board of Education of Oklahoma City Public Schools, 375 F.2d 158 (10th Cir.), the same circumstances prevailed.

Judge Bohanon as the trial judge has been most diligent and understanding during the course of these protracted proceedings. He has been faced with many unusually difficult situations in his enforcement of the mandates of the Supreme Court and has acted in an effective and skillful way. The record in

this and the related cases demonstrates that little or no action would have been taken by the Board of Education without his "encouragement."

The judgment of the trial court dated January 16, 1970, in District Court No. 9452 Civil is hereby affirmed as to its approval of the Cluster Plan. We express no opinion on the portion of the order or judgment (paragraph 4) relating to the future possible modifications for the two schools there mentioned, Dunjee and Kennedy.

*Appeal in No. 542–69:*

This appeal concerns an application for an extension of time which has now become the subject of appeal, 430 F.2d 871, which is this day decided. The appeal in No. 542–69 is therefore dismissed as moot.

*Appeals in Nos. 541–69 and 435–69:*

■ The undisposed issue in these appeals relates only to an extension of attendance areas for the paired Harding and Northeast Schools. The Board in an effort to meet changes in residential patterns which took place between the initial order affirmed by this court and a subsequent hearing in the trial court and which were still taking place extended the attendance zones for these paired schools for the 1969–1970 school year. In our opinion the Cluster Plan which has been hereinabove considered, if it is effective, and we believe that it is, will provide a remedy for such everchanging composition of the neighborhoods beginning with the 1970–1971 school year. The boundary change was a device directed only to a particular situation and was pending in this court at the time of the approval of the Plan by the trial court. It was operative for the year but we hold that it is now superseded by the system-wide Plan. To hold otherwise is to assume that the Plan will not reach the desired results throughout the entire system. Therefore, the order of the trial court approving the extension of the boundaries of the Harding and Northeast Schools which was an issue in the above numbered cases is hereby set aside and the attendance zones for these two schools under the Cluster Plan will be as they existed for the 1968–1969 school year and prior to the entry of the trial court's order of extension.

The mandates in the several cases, as indicated above, shall issue forthwith in order that the Board may forthwith proceed with its work in implementing the Plan and will not be stayed pending motions for rehearing or certiorari.

HILL, Circuit Judge (dissenting).

I respectfully dissent from the majority opinion only with respect to the boundary changes involved in cases 541–69 and 435–69.

At the end of the school year 1968–1969, during which Harding and Northeast were paired for purposes of desegregation, it was apparent to Judge Bohanon that a process of resegregation was taking place and that an enlargement of the school boundaries to include more white school area was necessary to stop the resegregation.[1] This prompted the enlargement of the Harding-Northeast attendance area, which enlargement was embodied in the Cluster Plan. Now the majority strikes down this boundary change on the reasoning that because the Cluster Plan is system wide, in operation, there is no longer a need for the boundary enlargement. They overlook the so-called home base aspect of the Cluster Plan and the desirability of desegregating the home base attendance areas regardless of the system wide application of the plan. The attendance data in the schools embraced in the new

---

1. In 1965, Harding was all-white, whereas Northeast was 78 per cent white and 22 per cent Negro. Projected enrollments for 1965 indicated that if the schools were paired, both Harding and Northeast would become about 90 per cent white and 10 per cent Negro. But when the pairing directive was implemented in 1968, residential patterns had so shifted as to make Harding about 58 per cent white and 42 per cent Negro and Northeast about 44 per cent white and 56 per cent Negro.

boundary arrangement for the school year 1969–1970 clearly reflects that the now boundaries actually resulted in desegregation progress.[2] These facts, standing alone, should preclude this court from molesting the court approved plan.

In addition, the conclusion of the majority is not consistent with Rule 52, F. R.Civ.P., the disposition of Dowell v. Board of Education et al. (unpublished opinion No. 435–69, filed August 27, 1969), the overall purpose of the Civil Rights Act, or with the Cluster Plan itself.

By the Board's statement, the district court made findings that the Cluster Plan was developed in good faith, was meaningful and feasible, and would result in the operation of a unitary school system. This finding surely took into account the expanded boundaries and was premised to a certain extent, on that part of the Plan. In fact, the district court ordered that "no steps shall be taken which in any manner retreat from or modify steps thus far taken desegregating the Oklahoma City Public Schools." Although there is no mention of Rule 52, or "clear error" in the majority opinion, there appears no reason why the "clearly erroneous" rule should not apply to such findings, as it does in every other civil suit tried to the court.

In Dowell v. Board of Education et al., supra, wherein the August 13 order was vacated, this Court made comments relevant to this aspect of 191–70: "It is not the province nor the disposition of this court to interfere with the trial court's considered judgment concerning the remedial measures to be taken in cases like this. The trial judge's judgment is entitled to great respect and weight and we will interfere only to the extent necessary to determine whether the remedial measures taken are within statutory and constitutional limits."

There appears no reason to give Judge Bohanon's decision regarding boundary changes any less credence than has been given the other and, perhaps, more critical determinations. It appears that the majority opinion does not adhere to the test by which the Court earlier felt bound. For neither the statutes nor the Constitution require this Court's interference regarding the boundary changes, and accordingly, it ought to take a "hands off" attitude on that issue.

The majority expresses full confidence in the Cluster Plan but at the same time changes the school attendance boundaries back to a position which previously threatened the subject schools with resegregation. Even though there will still be racially identifiable schools ("home base" schools), the dominant purpose should be to eliminate as many as practicable. Under the 1968–1969 attendance zones, Harding and Northeast are in a position of imminent racial identifiability. While the new boundaries may not prevent it, the old ones will cer-

2.

### 1968–1969

| School | Negro | White | Total | School Capacity |
|---|---|---|---|---|
| Harding | 467(41.8%) | 649(58.2%) | 1116 | 1488 |
| Northeast | 501(56.3%) | 388(43.7%) | 889 | 1550 |
| Taft | 8(0.6%) | 1372(99.4%) | 1380 | 1302 |
| Northwest | 16(0.5%) | 3065(99.5%) | 3081 | 2914 |

### 1969–1970

| School | Negro | White | Total |
|---|---|---|---|
| Harding | 391(29.7%) | 925(70.3%) | 1316 |
| Northeast | 436(40.4%) | 643(59.6%) | 1079 |
| Taft | 168(15.3%) | 929(84.7%) | 1097 |
| Northwest | 333(12.2%) | 2408(87.8%) | 2741 |

tainly contribute to it. Furthermore, under the old boundaries, both Harding and Northeast will operate well below their student capacity while several adjacent schools will be operating (as "home base" schools) above their capacities.

The overcrowding, the definite trend toward resegregation, and the requirement of the Civil Rights Act to assign pupils to schools without regard to their race or color, all seem to support the trial judge's decision to use the 1969–1970 boundaries as the basis for the Cluster Plan.